All right, we're ready. Thank you for case number three. Mr. Wolfe, you may approach. Good morning, and may it please the court. My name is Thomas Wolfe on behalf of the appellant GeoSnapShot. My client comes to this court today asking it to reverse the decision of the district court which denied my client's motion to compel arbitration primarily for two reasons. The first is that an arbitrator and not the court should have decided the issue as to whether GeoSnapShot is a non-signatory could compel arbitration because of the agreement's delegation clause found in that arbitration provision. Alternatively, even if the district court were to decide the issue, it erred by ruling that the arbitration provision did not apply to the released parties as it was defined in the agreement. Now onto the gateway issue here as to who decides. Judge Rovner, go ahead. But GeoSnap was not a signatory to the release agreements. So why is it a question of whether it can enforce the arbitration provision of the arguments, one for a court, just as it was in our CCC decision? Well, this is a unilateral signature contract. Only one party was required to sign it for it to be enforceable. So no other party who signed it would be coming in to enforce arbitration. And if we read some interpretation and meaning into these contracts, which is required, a non-signatory is going to be the party to come in and enforce the arbitration provision. Yes, but Tucksmiller was a party. Well, the contract itself is between the released parties and releasing parties. There's 11 or 12 different categories or groups that are identified that would qualify as a released party. And in that regard, my client, as we argued clearly, would fall within that definition. But as a non-signatory... Looking at just particularly the data consent in online on-site waiver from August 14th of 2021, that's docket 62-1, where would GeoSnap fall in the categories of released parties? Well, it's either an affiliate or contractor of Tucksmiller, the event organizer. And to the extent that there's any question about that... Judge Rolner is speaking. I'm sorry, Ms. Gifford. Laurie, I know there's a lag and I really am sorry, Mr. Wolf, but your position seems to assume that there's a valid agreement to arbitrate here. But isn't the relevant question, whether the plaintiffs agree to arbitrate with GeoSnap as opposed to someone else? Well, the gateway question is whether a non-signatory can enforce the contract when these arbitrability issues have been delegated to arbitration. There is no case on point in the Seventh Circuit. And post-KFC intractable, you would have many decisions from the district courts in Illinois acknowledging that. I mean, for example, just from the Southern District of Illinois alone, we had the Coons decision, Coons v. Yum Brands, which found in favor of the argument we've raised that was decided less than a year before this case, which went the other way. And there are other cases as well that we've cited too, even ones that found... Wasn't it clear in that case that Bell, I'm using the Yum case, I'm sorry, that Bell was a party to the contract, going back to Judge Rovner's question. Isn't that... Is that distinguishable from the facts we have here? It's not. I mean, that case, none of the defendants who compelled arbitration signed the agreement in Coons. There was an agreement that the plaintiff would seek arbitration for any claims with the company. The company was Bell American Group, who was not a defendant in that case. All four defendants, I believe it was four, none of them signed the agreement at all. And the court ordered or compelled arbitration, regardless of the challenge to this enforcement issue, because of the sweeping delegation clause that reserved this issue for decision on all issues of arbitrability. But it found Bell to be a party, correct? Bell American Group was a party. They signed the agreement with the plaintiffs, but none of the defendants who compelled arbitration signed that agreement. And what is your limiting principle here? Because it sounds to me like you're saying any non-signatory, that there could be an agreement that I'm agreeing to submit any dispute I ever have from now to my passing to arbitration. And someone can come in and say, well, Judge Kohler agreed to arbitrate, right? That can't be right. But I didn't see anything in the record that suggested that GeoSnap itself was adopting this position, asking for arbitration, making itself bound to arbitration. So what's your limiting principle here? Right. And I think that's largely a red herring that was raised by the plaintiffs in their briefs. I mean, we're not a random defendant. We have a relationship to these events. And the arbitration provision itself reserves any dispute to arbitration that are related to or arising from the Tough Mudder event. Does the record show that you asked for that, that you knew about it? Anything of that nature? Well, I think it's sort of reversing the principle here. What's relevant is what did the plaintiff agree to? What did these plaintiffs agree to? What did they expect or intend? But I think that's very relevant to what is the contract? And if there's no contract, I can't send that to an arbitrator. It's a contract formation issue. Well, it's really an enforcement issue. You know, that's the argument we're raising here because the contract itself is, it's only signed by the plaintiffs, but it's releasing, for example, certain negligence claims against the released parties. I mean, they're using the word party in there. And so if we're to say that you have to sign this agreement to be a party, then there is no other party to the agreement. I'm not concerned with who signed it. You can have an agreement between two parties that's a valid contract without being a signatory. Right. I agree with you. Yes, on that point. But to the extent of, you know, where does this end? You just look at the language of the arbitration provision of it itself. That's the limiting principle, if that's what you're what you're asking. And the language must be applied as it's written. Well, I can find no clue. I can find no clue, unfortunately, in the arbitration provision or elsewhere in the contract that the signatories intended for a third party vendor to be able to compel arbitration if sued. So can you help me? Sure. Thank you, Judge Roebner. So if we were to read that arbitration provision as being silent to some vendor, which would fall under the definition of released parties, then it really reads that provision meaningless because not even Tough Mudder is mentioned in the arbitration provision. The only person that's mentioned in the arbitration provision are the plaintiff's signatories. And I think it's left intentionally broad because it's not concerned necessarily with, you know, marking a specific person that you're agreeing to arbitrate these claims with. It's related to the event itself. Is it broad or is it vague? Well, I believe it's extremely broad, but it's intentionally done in that way because it's trying to make it clear that any claim that you may have arising out of this event must go through arbitration. And likewise, the delegation clause continues that. So how would that even be limited to the released party? You could get in an accident on the way to the event. Well, I would argue that that's not related to the event itself. The event is, you know, an obstacle course. Endurance event and driving to it is not related to the event, I would argue. Would taking photos be a part of the event? Yes, the photographs are taken at the event of the event participants and then they're uploaded to my client's website where these event participants can go on and download them or purchase them. So you would equate what GLSTAT was doing to be equivalent to a Tough Mudder event? Correct. It's the official photographs of these events that you know, and even within the complaint, the plaintiffs take out a whole section dedicated to my client's relationship to the event organizers, Tough Mudder, that started in 2019, that allowed my clients to send photographers to all of the Tough Mudder events. They go through a list of those events that we had participated in and it includes the events that they actually attended in Illinois. So this issue, again, about the enforcement issue, right, again, there's no question there's a contract that was signed here by these plaintiffs and it references arbitration. The question is, can my client enforce it? But that is a question that was specifically delegated to an arbitrator in this case. You're saying that the judge was wrong to decide whether or not GLSTAT was a third-party beneficiary? Correct. He shouldn't have decided that. That was specifically reserved for an arbitrator to decide what the delegation clause, specifically with the incorporation of the AAA rules, that reserves jurisdiction for the arbitrator to decide even the existence of a contract. Would that conflict with KFC, our holding in KFC, or CCC? KFC primarily dealt with, or didn't really deal with, this non-signatory enforcement issue. There was a challenge in KFC to whether the minor plaintiff was able to void or whether the contract was voidable because of his age. But regardless of that formation issue, there is support for it within the Janiga decision. Let me take it back to my question. So if KFC, you believe, is distinguishable, is CCC distinguishable? Does it foreclose this argument that the district court erred in answering the third-party beneficiary question? Yeah, we do believe CCC is, which I've been calling attractable, just to make sure we're on the same page. Yes, sir. We do believe that that is distinguishable as well. And that's a, it was clear that there was no possibility for a third party to be able to compel arbitration based on the language in that contract, that issue. So the defendant who was trying to compel arbitration had to try and claim they were the other party that signed the contract, which is, you know, we have a dual signature contract, which we don't have in this case. And we're not claiming to be Tough Monar. We're claiming to be identified as a released party, which includes 11 or 12 different groups of individuals or entities within the contract. But here, as in CCC, we have a non-signatory to an agreement attempting to enforce the agreement's arbitration clause. And it seems to me that CCC makes clear enough that that's a question for a court to resolve. Well, in CCC, they weren't claiming they were a non-signatory. The defendant in that case was claiming they were the actual signatory, and therefore they could enforce. And it wouldn't be the case here because there's only one signatory to these agreements. And that's why it's distinguishable. Didn't CCC say the question whether C can claim rights under a contract that has only A and B as parties? Is, was the issue there? That was the case, yes. But there is no C in that equation because the contract specifically foreclosed any reliance or benefit to any other third party. This contract here is not like that contract. This one is open to, as we said, the released parties. There's a waiver of liability for certain negligence claims, for example, directly to benefit the released parties in this case. The signature, right above the signature block, there's an acknowledgment and understanding that there's a waiver of certain rights that the signatories are giving up their right to sue the released parties by signing the contract. It's completely, a completely different issue and a completely different type of contract at all. And that's why the case is not really on point here. Now, we've cited to various cases across the country. Would you like to save some time for a vote? We would. May it please the court. Good morning, your honors. My name is Matthew Lamole. Here on behalf of the plaintiffs and the class they seek to represent, we ask the court to affirm the decision below. The district court correctly decided for itself that GeoSNAP can't compel arbitration. And that's because no court can refer a matter to arbitration unless there's a contractual basis. And so naturally, the court, rather than an arbitrator, must be the one to decide whether the party seeking to compel arbitration has a contractual basis to do so. And here, GeoSNAP can't make that showing. It can't show that it has an agreement with plaintiffs. And it can't show that it's a it's a it's a third party beneficiary of the Tough Mudder agreements. So what was the point of identifying a broad swath of released parties, if not to directly confer on those parties a release from liability? In other words, why shouldn't we treat GeoSNAP as a third party beneficiary of these agreements? Well, Your Honor, it would be one thing to treat GeoSNAP as a third party beneficiary for the terms of the release, which is not the question that's before the court. But when we're talking about whether GeoSNAP is a third party beneficiary of the arbitration agreement or the delegation clause within the arbitration agreement, under Illinois law, to support that third party beneficiary status with respect to a particular provision of a contract like an arbitration agreement, GeoSNAP has to show that that provision of the contract is itself susceptible to making it a third party beneficiary. I think that's the concern your colleague on the other side raised is now we're moving from formation to enforceability. And looking at the contract, the question of enforceability, was that handed over to the arbitrator by the plain language of the contract? And I think the answer is no, Your Honor, it was not, because as the Supreme Court has explained in Rent-a-Center, an agreement to arbitrate a gateway issue is simply an additional antecedent agreement the party seeking arbitration asked the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other. So even if we're looking specifically at the delegation clause, GeoSNAP's obligation is still to show that that delegation clause is an agreement between itself and plaintiffs, or that it's a third party beneficiary of that delegation agreement, and it's failed to make that showing. So we're going back for purposes of your argument, answering the question whether GeoSNAP is a party. Right. I mean, I think it comes out to the arbitration provision. Right. Either GeoSNAP would have to show that it's a party to the arbitration agreement or the delegation provision, or it has to show it's a third party beneficiary of that delegation agreement or arbitration clause. Why would it make sense for the signatories to treat someone like GeoSNAP as a release party, but not allow GeoSNAP to invoke the arbitration clause of the agreement, especially when you take a look at the breadth of the arbitration clause? So the arbitration clause is very broad, but it still doesn't get around the Illinois law principle that in order to invoke an arbitration agreement, the third party, the party asserting it's a third party beneficiary has to show that that provision itself is susceptible to that interpretation. And I think the Illinois decision that's helpful here is a case cited in our brief called Washington versus Persona Identities, which has a similar situation where you have a non-signatory defendant who was trying to compel arbitration as a third party beneficiary. And the defendant there claimed that it was referenced in the agreement as a third party vendor, just like GeoSNAP claims here that it's referenced as a contractor within the class of released parties. And the arbitration clause in that Washington case also used very broad language. In fact, as the court put it there, it encompassed an almost limitless range of arbitrable debut topics. But the key point was that the arbitration clause was silent about non-parties. And as the court held in Washington, a generic arbitration clause, no matter how broad, cannot show an intent to directly benefit the non-party. That's 254 Northeast 3rd at 405. So that's a real problem. I'm sorry. Is there a question? No? Okay. That's a real problem for GeoSNAP's position because what we have in the Tough Mudder agreements is the same kind of generic arbitration clause that's silent about non-parties. So there's no way to conclude, as Illinois law requires, that the arbitration provision or the delegation provision was intended to benefit GeoSNAP. But it's not silent here. What we have, I guess, are we conceding, are the plaintiffs conceding that GeoSNAP was a released party under either version of the liability agreements? No. No, we're not, Your Honor. Particularly with respect to Ms. Gustafson, she signed her three agreements either before the terms of the contract that GeoSNAP had with Tough Mudder, or after the term of that contract. And there's no other facts in the record that would allow the court to conclude that GeoSNAP had a relationship with those entities at the time that Ms. Gustafson signed her agreements. So if we move on to the second question, that question of whether GeoSNAP could compel arbitration as a released party.  Well, I mean, they can't because the reason I just explained. They need to, they're not a signatory. And the rule that this court applied in the SOSA versus on FIDO decision under Illinois law, a non-signatory to a contract typically has no right to invoke an arbitration provision contained in that contract. So then we move on to the third question. Right, in the liability waiver, but not in the arbitration clause. And in fact, if you look, I mean, there's even language in the agreements that kind of, you know, suggests that the arbitration provision is distinct from the release. If you look, for example, and this is in any of the agreements, but if you look at document 62-1 on page 40 of 40. Can you tell me the date of the agreement? Yes, this is the August 27th, 2022 agreement with Ms. Gustafson. Okay, I have it. Okay. So if we're looking on, it's the third page of the agreement, you have the section that deals with the release is kind of the first two and a half pages of this agreement. And then about a little over halfway down, the release portion ends and then we see other agreements. It's right above the venue and jurisdiction clause. And then we keep looking below and there's severability, there's integration. And then there's mediation and arbitration. So the language of the contract is even separating the mediation and arbitration provision from the release that was granted earlier. And there's just no reference in the arbitration clause about released parties. And as Judge Kohler pointed out earlier, that is vague and that is a problem for GeoSNAP. Sometimes you try to draft a contract so broadly that it encompasses everything. And what you end up with is a contract that encompasses nothing because it doesn't specify, certainly not with the specificity required under Illinois law for determining someone is a third party beneficiary. There's just nothing nearly specific enough for the court to conclude that when the plaintiff signed this agreement, when anyone signed this agreement, that they could have understood that the released parties were going to be swept into the arbitration clause. Any additional questions? All right. Thank you, counsel. Thank you. Thank you. And just a few brief points to touch on. This issue with the intended beneficiary status, which is really our alternate argument, that at a minimum we qualify as an intended beneficiary, that issue has to be decided based on an interpretation of the contract as a whole. Both SOSA and the Washington versus Persona identities both engaged in the complete analysis of the contract as a whole. And in doing so, the rulings were that reading the entire contract, there is no benefit intended for a third party. That is obviously not the case here. With a release and a waiver of liability for certain claims in the pre-COVID releases and in the post-COVID releases, there's an additional waiver of liability for any COVID liability, for example. This issue about the signing date of when my client first became an affiliate or contractor with Tough Mudder is also another red herring because the agreement applies to the event. So the date of the event is the pertinent date as to which that issue should be analyzed. And for further support on that point, release party also includes co-participants and spectators. You won't be a co-participant or spectator until you show up at the event on the day of the event. Otherwise, again, they're reading these provisions meaningless. The other point that I wanted to touch on about this contract enforcement issue, if I can have 30 more seconds, is that around the country that the other circuits have agreed with our position on this point. Specifically, I would direct the court to the Sixth Circuit's decision in Blanton versus Domino's, that this is the majority rule based on this issue. Where there is a contract, it references arbitration, and a non-signatory comes in to try to enforce that agreement. The majority rule is that based on the delegation clause reserving all issues of arbitrability to an arbitrator, the court should not decide that question. An arbitrator should. Thank you, Counselor. Thank you. We'll take the case under advisement.